# UNITED STATES DISTRICT COURT
## For The Southern District Of New York

_____
)
COUNTER TERRORIST GROUP US,     )
COUNTERR GROUP, *and* J. K. IDEMA,    )     ECF
         *Plaintiffs,*     )
                        )     **Plaintiffs'**
    **v.**                  )     **Reply**
                        )
NEW YORK MAGAZINE;     )
NEWYORKMETRO.COM;     )
NEW YORK MAGAZINE HOLDINGS, LLC**,**   )     Case # 07 CIV 9516 (DAB)
LAWRENCE C. BURSTEIN,     )
STACY SULLIVAN;     )     **Assigned Judge:**
JOSEPH A. CAFASSO; EDWARD A. ARTIS;   )     Honorable Deborah A. Batts
TRACY PAUL WARRINGTON,     )
TOD ROBBERSON;     )
Both Individually and Severally,     )
and DOES 1 through 7, inclusive,     )
         *Defendants.*     )
_____
)

### PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITIONS TO MOTION FOR RECONSIDERATION OF DISMISSAL OF CASE AND MEMORANDUM OF LAW

     Plaintiffs, hereby Reply to Defendants' Opposition to Plaintiffs' Motion to Reconsider the Court's ORDER of March 10, 2008, dismissing the case for failure to prosecute.

### COUNSEL'S STATEMENT

### AND REQUEST TO FILE EXHIBITS AND AMENDMENT TWO DAYS LATER

The undersigned counsel is on vacation with his family in the Dominican Republic. Mr. Idema is apparently violently ill at the moment. Co-counsel is engaged in his prosecutorial duties in New Jersey, this motion was drafted over the phone from the Dominican Republic. Plaintiffs request this Court please consider that the undersigned is the only attorney with actual knowledge of the service and events in this instance and ask to file an amended reply and exhibits when he returns to the United States.

## PRELIMINARY STATEMENT

1.    This case is not without merit.[1]  Plaintiffs applied for 20 additional copyrights on April 19, 2005.  The US Copyright Office stamped the applications as received on June 15, 2005.  For the last two years Plaintiffs' counsel and two other attorneys have spent considerable time tracking and following the registration process.  Although several of the registrations had not yet been received from the copyright office when the instant complaint was filed, the US Copyright Office retroactively issued them on February 25, 2008, and Plaintiffs other counsel received the originals on March 13, 2008.[2]  The two new copyright certificates are attached hereto as Exhibit A (registration #s VAu755-440 and VAu755-449).[3]  The photographs infringed upon by the Defendants and published in the October 25, 2004 issue of New York Magazine are attached hereto as Exhibit B.

## EVASION OF SERVICE

2.    Counsel for Plaintiffs began the service of the summons and complaint on January 20th, 2008, 31 days prior to the actual 120 deadline (see affidavits of John Edwards Tiffany, ¶¶ ___ and Brooke Murphy, ¶¶ ___).

3.    Plaintiffs were concerned that serving any one of the Defendants would cause the other individual Defendants to know of the attempted service, and then attempt to evade service.  Therefore, after considerable discussions between counsel and with Plaintiffs, we believed it was necessary to locate all the Defendants before serving any one of them.  By mid-February 2008, we were fairly sure we could locate all of the Defendants (see Exhibit ___, March 31, 2008 Brooke Murphy affidavit ¶¶ 4, 5, 11, 17, 19).

4.    This fear was justified.  We began to serve the complaint before February 20, 2008 after finding the last of the defendants (although we only had an approximate location

---

[1] Plaintiffs concede that the time to serve the summons and complaint (within 120 days) expired on midnight Thursday, February 21, 2008, not midnight Monday, February 25th, 2008 as previously believed and set forth in prior pleadings.   However, Plaintiffs submit that there was good cause, and even absent good cause, the courts have found an extension to serve is warranted based other factors, all of which are present in the instant case (see Exhibit ___, March 31, 2008 Brooke Murphy affidavit ¶¶ 2-4).

[2] Plaintiffs would have filed an amended complaint shortly thereafter with the copyright certificates attached had the case not been closed.

[3] Plaintiffs are still waiting for a replacement certificate for TX0005860241 / 2003-12-03, the actual book with cover and photos, but have attached a true and correct printout of the listing at the copyright office.

for Edward Artis).  When Defendants discovered the existence of the suit they began to evade service.  The failure to serve within the 120 days was caused by Sullivan's, Warrington's, Artis', and Robberson's attempts to conceal their locations and desire for run the clock out.

5.    This case required more than a dozen different process servers and private detectives throughout the United States and in foreign countries to effectuate service. Plaintiffs had a genuine concern that once service was executed on any one Defendant, it would be extremely difficult to serve all of the remaining Defendants.  This concern turned out to be valid as the moment Tracy-Paul Warrington was first served all other Defendants began very actively evading service.

6.    As a matter of background, plaintiffs knew that service would be extremely difficult in this case.  Several defendants, such as Stacy Sullivan, Edward Artis, Tracy Paul Warrington, and Joe Cafasso have gone through extraordinary measures to conceal their whereabouts since the events set forth in the complaint.  Some use a variety of alias names, misleading company names, forwarded phone numbers, and other methods of concealment.

7.    Plaintiffs spent more than $6,000 dollars in private investigator fees, process server fees, search fees, and legal fees just to locate and serve these defendants.  Plaintiffs went to extraordinary lengths to serve these defendants, *see* March 31, 2008 Brooke Murphy affidavit, generally, and as more fully set forth below.

### Service on NY Mag

8.    In regard to the New York Magazine Defendants, and Lawrence Burstein, in spite of the fact that NY Magazine Holdings, LLC (the owner of the other NY Magazine entities) changed its name, and failed to list a registered agent or its new address with the New York Secretary of State, a women who presented herself as an attorney for New York Magazine accepted service.   Opposing counsel now claims the woman was only a human resources employee (Strom Declaration ¶ 3).  However, this unsupported hearsay statement by counsel is completely contradicted by investigator and process server Brooke Murphy (*see* Exhibit __, March 10, 2008 Brooke Murphy affidavit ¶¶ 12-15 and Exhibit __, March 31, 2008 Brooke Murphy affidavit ¶¶ 6-9).

9.      Opposing counsel accuses Plaintiffs' counsel of making the "blatantly false" statement[4] that Ms. Strom "discussed a discovery schedule with Plaintiffs' counsel" (Strom Declaration ¶ 11).  Contrary to this accusation Ms. Strom did in fact leave a message that she wanted to discuss the "discovery schedule" with Plaintiffs' counsel.  Plaintiffs motion stated Ms. Strom "entered into communications with Plaintiffs' counsel."  Plaintiffs submit that their statement was not false, but was accurate—Ms. Strom entered into communications through her messages.  This *ad hominem* attack was unnecessary and uncalled for and solely for the purpose of impugning counsel's integrity.  Plaintiffs did not argue that Ms. Strom had waived any rights by leaving her messages, nor do Plaintiffs now assert that waiver.

10.     The New York Magazine Defendants, and Lawrence Burstein, and the other Defendants obviously had prior knowledge of the suit.  Jocelyn Gottschalk admitted this (*see* Exhibit __, March 10, 2008 Murphy affidavit ¶ 14 and Exhibit __, March 31, 2008 Murphy affidavit ¶¶ 7-9).  Further, Mr. Idema had given these Defendants notice of the suit on December 7, 2004 (Complaint ¶¶ 28-31) when he first learned of the copyright infringement, and again on January 11, 2005 (Exhibit __).  Upon information and belief, Warrington also knew that a suit had been filed according to the process server that finally located him.  Edward Artis also knew (*see* Exhibit ___, March 31, 2008 Murphy affidavit ¶ 17).

## Service on Stacy Sullivan

11.     Like the other Defendants, Ms. Sullivan has chosen not to file a statement of events under oath, instead relying on her attorney to give Ms. Sullivan's version.  Ms. Sullivan was finally served twice, after trying to evade service.  Now, through her attorney, Ms. Sullivan continues to evade service by claiming that the summons and complaint were left in her buildings' lobby, when, in reality, she was served in her office on the 34th floor, and a second service was made on her security detail while she was hiding—but she was there (*see* Exhibit __, March 31, 2008 Murphy affidavit ¶¶ 13-16).

## Service on Edward Artis

12.     Edward Artis was clearly trying to evade service.  First, by distributing false information on the internet and to associates that he had moved to the Philippines to avoid this

---

[4] Plaintiffs' Motion actually stated "Defendants outside counsel has already entered into communications with Plaintiffs counsel to set a discovery schedule."

suit.  Second, by actually hiding when service was attempted (*see* Exhibit __, March 31, 2008 Murphy affidavit ¶ 17-18).

### Service on Tracy-Paul Warrington

13.    As stated in the response of Mr. Warrington's counsel, Plaintiffs do not assert that Warrington actively tried to hide or evade service when he answered his door for the process server.  However, Warrington did make it extremely difficult to ascertain he was actually at that location and used other means prior to service to avoid be located.  (*see* Exhibit ___, March 31, 2008 Murphy affidavit ¶ 19).  Upon information and belief, Warrington did warn the others that process servers were now serving these Defendants around the country.

### REPLY ARGUMENT

### I.

### PLAINTIFFS' MOTION DID COMPLY WITH LOCAL RULE 6.3

14.    Defendants request that Plaintiffs' Motion to Reconsider be denied without consideration because it "*completely fails to comply with the Local Rules...*" because "*… Plaintiffs failed to provide a notice of motion or a memorandum of law as required by Rules 6.3 and 6.1 of the Local Rules,*" because "*...despite Plaintiffs awareness that the NYM Defendants are being represented by the undersigned counsel,[5] Plaintiffs completely failed to serve the NYM Defendants with any of the papers supporting their Motion to Reconsider.*" (New York Magazine Response, pg 5-6).

15.    Rule 6.1 of the Local Rules of the Southern District of New York provides for the following:

**Local Civil Rule 6.1. - Service and Filing of Motion Papers**

(b) On all civil motions, petitions, applications, and exceptions other than those described in Rule 6.1(a), and other than petitions for writs of habeas corpus,
(1) the notice of motion, supporting affidavits, and memoranda of law shall be served by the moving party **on all other parties that have appeared in the action**, [emphasis added]

---

[5] Plaintiffs counsel personally takes exception to footnote #2 in Ms. Strom's Response, and categorically denies that it is the correct recounting of the actual events.  Be that as it may, it is a conflict in memories of events which need not be addressed at this juncture.

(2) any opposing affidavits and answering memoranda shall be served
within ten business days after service of the moving papers, and
(3) any reply affidavits and memoranda of law shall be served within
five business days after service of the answering papers.

16.    Neither Ms. Strom, nor any other counsel for any Defendant had appeared in the case when the motion was filed.  Nor had any counsel, including Ms. Strom filed a notice of appearance when Ms. Strom wrote a letter to the Court advising the Court that she would be filing a response.  Even now, Ms. Strom was made it clear in her response that she has only tentatively "specially appear[ed]" (New York Magazine Response, pg. 2, ¶ 1).  The rules appear clear, service is only required upon a party that has appeared.  Our understanding of this rule is that a party or their attorney must enter a formal notice of appearance before service, even by ECF, is required.  Plaintiffs advised the Court of this in footnote 3 of their Motion.  The motion contained the rule in which it was filed under and two cites.  For the purpose of brevity, and due to the time constraints, Plaintiffs counsel did not feel a separate memorandum of law was necessary where the law was well established.  Finally, absent an appearance by any other counsel, Plaintiffs had no reason to believe that Rachael Strom had been formally retained, was actually representing Defendants, or even was an attorney based on the prior misrepresentations by New York Magazine employee Jocelyn Gottschalk who had claimed she was their attorney, and the Chief Operating Officer, Kit Taylor who also claimed Ms. Gottschalk was their attorney (*see* Exhibit __, March 10, 2008 Murphy affidavit ¶¶ 12-14, 18, and Exhibit __, March 31, 2008 Murphy affidavit ¶¶ 6, 8, 10).

## II.

### THE TIME TO SERVE SHOULD BE EXTENDED UNDER RULE 4M FOR GOOD CAUSE OR IN THE ALTERNATIVE, A DISCRETIONARY EXTENSION IS WARRANTED

17.    Unlike those cases where no affirmative steps were taken whatsoever to effectuate service in a timely fashion, *see Hutchinson*, 2003 WL 22056997, *11; *Point-Dujour v. United States Postal Service.*, No. 02 Civ. 6840, 2003 WL 1745290, *3 (SDNY March 31, 2003), Plaintiffs started service on Defendants more than a month in advance and accomplished service on all Defendants between one and three days late, and therefore should

be granted a *nunc pro tunc* extension of time, making the February 22 thru 25th, 2008 services effective.

18.     Even if the Court concludes that Plaintiffs have failed to make the requisite showing of good cause a discretionary extension is warranted and the Court must consider whether to grant a discretionary extension of time.  *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086,1098 (3d Cir. 1995), cert. denied, 117 S. Ct. 64 (1996).  This was also the question reviewed by the U.S. District Court of the Western District of New York in *Colleen Conner Ziegler v. Glaxo Smith Kline, f/k/a Glaxo Wellcome*.  U.S. District Judge David Larimer carefully studied the facts before determining that the plaintiff was entitled to a *nunc pro tunc* extension of time.   In that case, Judge Larimer explained that following the 1993 Amendments to Rule 4(m), courts were permitted to extend the 120-day time limit even when plaintiff shows no good cause, citing *Henderson v. United States*, 517 US 654, 658 n5 (1996).  [R]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.  Advisory Comm. Notes to Fed R Civ P 4(m).

19.     Here, Plaintiffs assert that they will face a statute of limitations barrier and will not be able to refile the complaint if the court dismisses the case pursuant to Rule 4(m).  Although this reason alone is not, by itself, sufficient in every case to warrant the discretionary extension, it does weigh in plaintiff's favor under circumstances in this case. *See Buckley v. Doha Bank Ltd.*, No. 1 Civ. 8865, 2002 WL 1751372, at *3.   In drafting the amendment of Rule 4(m), the Advisory Committee plainly had in mind, as its Notes state,

> "The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. . . . Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action . . . ." Fed. R. Civ. P. 4(m) Adv. Comm. Notes (1993) (emphasis added).

Interpreting this rule, under which the court may extend the time for service to avoid the bar of limitations, to authorize the court to refuse to extend it so the defendant may gain the benefit

of that bar appears to be inconsistent with its purpose. *See, e.g., Goodstein v. Bombardier Capital, Inc.*, 167 F.R.D. 662, 666-67 (D. Vt. 1996) (extending time in part to prevent plaintiff's case from being barred).

20.     Neither Idema nor Counterr Group, the joint copyright holders, were in any way at fault for the delay, but they would be the parties to suffer from a dismissal.  No Defendant has claimed they were prejudiced in any way by the two to four day delays in service, and the delay was certainly not intentional.  Given that, Congress clearly intended that a "court would undoubtedly permit such a plaintiff additional time within which to effect service." *1982 U.S. Code Cong. & Admin. News* at 4442.

21.

## III.

## Plaintiffs Would Be Unduly and Permanently Prejudiced By Dismissal

22.     Under Rule 4 the time for service should be extended if failure to extend would create a statute of limitations issue.  Failure to extend would cause an statute of limitations issues because….

23.     Federal Rule of Civil Procedure 4(m) requires a court to dismiss an action without prejudice "[i]f service of the summons and complaint is not made upon a defendant within 120 days of filing the complaint," or to extend the time for service "if the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m).  Further, as in the instant case, even without a plaintiff's showing of good cause, however, an extension is appropriate when "the applicable statute of limitations would bar the refiled action." Fed. R. Civ. P. 4(m) Adv. Comm. Notes to 1993 Amends. (citing *Ditkof v. Owens-Illinois*, Inc., 114 F.R.D. 104 (E.D. Mich. 1987)). *See also Henderson v. United States*, 517 U.S. 654, 658 n. 5 (1996) (noting that Rule 4(m) permits an extension even in the absence of good cause).

24.     In this case, the statute of limitations has run. Under both federal and state law, a cause of action accrues when the injury occurs or when a reasonable person should have known or had reason to know of the injury. *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1975); *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir. 1984).  A cause of action for Copyright Infringement and/or Contributory Copyright Infringement normally accrues upon first publication of the infringing photographs.  In this case, New York Magazine

and their co-Defendants first published the infringing photographs on October 25, 2004. Although Plaintiffs were not immediately aware of the original October 25, 2004 infringement, the tolling for discovery of the infringement in copyright law is unclear and most likely does not offer safe haven for these Plaintiffs in the instant case. A dismissal now would effectively dismiss forever Plaintiffs' copyright claims against each of the Defendants, because the three-year statute of limitations on Plaintiffs' claims ran on October 25, 2007.[6]

25.    This is not a "relation-back" scenario in which Plaintiffs seek add defendants in new capacities, although Plaintiffs were going to amend the complaint after service with the copyright registrations attached based upon this Court's ruling in *Kenny v. Ryan Web Solution, LLC*, Not Reported in F.Supp.2d, 2005 WL 1719878 (S.D.N.Y.), requiring registrations to be attached to a complaint (Exhibit A). In other cases, even where the statute of limitations would have expired, the Court has either allowed the case to be re-opened, or granted plaintiff leave to refile, *Tooker v. Copley*, 1987 WL 124315 (S.D.N.Y.1987) (court dismissed complaint without prejudice for lack of subject matter jurisdiction and granted plaintiff leave to refile complaint); *Conan Properties, Inc. v. Mattel, Inc.*, 601 F.Supp. 1179, 1182 (S.D.N.Y.1984) (court dismissed copyright infringement claims, other than those where the registered copyright were attached to complaint, and granted plaintiff leave to replead those claims); *Charron v. Meaux*, 60 F.R.D. 619, 624 (S.D.N.Y.1973) (court granted leave to replead copyright claims "since there has been no showing that correction of the defect ... would prejudice defendants"). Plaintiff also likens her case to *Demetriades v. Kaufmann*, 680 F.Supp. 658, 661 (S.D.N.Y.1988), where the court, in deciding a Motion for Preliminary Injunction, stated that "[t]he Copyright Office issued a registration before the court made its determination [on the Motion for Preliminary Injunctive Relief] ... hence giving the court jurisdiction."

26.

27.    Under North Carolina state law, Plaintiffs would normally be able to refile their state law claims within one year of the dismissal (quote law), however under the current dismissal they would not and the inability to replead these claims would prejudice Plaintiffs'

---

[6] Put in the copyright statute here

state law claim because the statute of limitations is generally not tolled when a case is dismissed without prejudice. *See Favia v. Bronx Council of the Arts,* No. 93 Civ. 5936, 1995 WL 358750, at *2 (S.D.N.Y. June 14, 1995).

28.    Nor is there any mistake in the parties named.[7] Accordingly, the motion falls within the *Ditkof* and *Henderson* line of cases, and the court may, at its discretion, extend the 120-day period for a reasonable time to permit proper service. *See Henderson,* 517 U.S. at 662-663.

## IV.

### PLAINTIFFS FILED FOR AN EXTENSION ON FEBRUARY 25TH 2008 WITH THE GOOD FAITH BELIEF THE TIME TO REQUEST AN EXTENSION HAD NOT YET EXPIRED

29.    Defendants' Opposition asserts that Plaintiffs did not file for an extension of time to serve until February 26th, 2008.  While on its face, this is technically correct, however, other factors should be considered by this Court.  Believing in good faith that the time to serve Summons and Complaint was midnight February 25th, 2008, Plaintiffs counsel logged onto the SDNY ECF system before midnight February 25th, 2008 and attempted to file for the extension.  Having difficulty with the filing (unable to upload the actual document), counsel continued to repeatedly try to file electronically.  Finally, the system accepted the document and logged it into the Court's system at 19 minutes after midnight.  A review of the ECF login records will confirm this, as does the attached receipt received via email from the EC Clerk at 00:19am EST on February 26th. 2008 (attached hereto as Exhibit ___).  This 19 minute delay did not prejudice Defendants nor was it an intentional or negligent delay by counsel.

## V.

### DEFENDANTS HAVE SHOWN EVASIVENESS EVEN IN THEIR OPPOSITION

30.    As evidenced by the Gottschalk bait and switch (supposedly an attorney, now a human resources employee) it appears Defendants continue to take affirmative steps to misled Plaintiffs and this Honorable Court.  It is clear that Defendants attempted to lull Plaintiffs into

---

[7] Put in part about NY Mag changing name and relocating.  In spite of the fact that……….. Because they did not notify the Secretary of State of New York.  Attach exhibit of Sec Sate search.

believing service was proper, as set forth in the affidavit of Brooke _____.... blah blah blah. Many cases warn defendants that they may not lull plaintiffs into believing service has been accomplished. *Vance v. U.S.*, 126 F.R.D. 14 (E.D.N.Y.1989); *Gordon v. Hunt*, 116 F.R.D. 313 (S.D.N.Y.1987); *Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104 (E.D.Mich.1987).

31.     It is also clear Defendants have and continue to evade service, as evidenced by the hearsay claims of Stacy Sullivan's counsel which assert Sullivan was served once through here receptionist as compared to the direct knowledge statement of Brooke _____, who states under oath he personally served Sullivan even though she ran away.

32.     In the case of Stacy Sullivan, contrary to opposing counsel's reliance on *Pearson v. Board of Educ. of City of New York,* No. 02 Civ. 3269 (RCC), 2004 WL 2297354, at *4 (S.D.N.Y. Oct. 12, 2004) (under New York law, "leaving a summons and complaint with an individual's secretary when the individual is not present does not constitute personal service") (citing CPLR § 308), Ms. Sullivan <u>was present</u>, and both process servers confirmed she was present.  Brooke Murphy identified her in person as the person depicted in the investigative report he had, and compared her picture to the person that appeared at the security office (*see* Exhibit __, March 31, 2008 Murphy affidavit ¶¶ 14).

33.     Tod Robbeson took five different process servers to locate and serve.  He consistently evaded service, and when he was first served it was while giving a speech (the only place he could be located at).  His counsel then claimed Robberson had been served at a synagogue during services—a completely false assertion (Exhibit ___).  Robberson was giving a speech at a men's club (Exhibit ___).   It is clear that a defendant who evades service cannot then argue that service was not timely. *1982 U.S. Code Cong. & Admin. News* at 4434, 4446 n. 25; 96 F.R.D. at 122 n. 25.

34.

## CONCLUSION

35.     To determine whether plaintiff has established good cause for failure to serve process timely, the courts consider whether plaintiff diligently made reasonable efforts to effect service, whether plaintiff moved under Fed R Civ P 6(b) to extend the time to serve the defendant and whether the defendant is prejudiced by the delay. <u>*See*</u> *Gordon v. Hunt*, 835 F2d 452, 453 (2d Cir. 1987).  All of these factors weigh heavily in Plaintiffs' favor.

36.    The dismissal of the case, even without prejudice would completely obliterate any chance of justice for the Plaintiffs as re-filing would be beyond the statute of limitations. The service of process in this case has been the most time consuming and costly service of my career in law.  Plaintiffs should not be injured by defendants who have been obstructive, evasive, and engaged in wrongful acts to subvert justice.

37.    [M]ere inadvertence, neglect or mistake of a litigant's attorney' will not constitute good cause, Judge Larimer wrote, citing *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt. L.P.*, 197 FRD 104, 108 (SDNY 2000).  Nevertheless, it still is appropriate to extend the time for service in this case. First, Defendants Response (and the letter of Rachel Strom indicating they would oppose Plaintiffs' Reconsideration) was the first notice Plaintiffs received that there was any problem with the service on Defendants. *Cf. Alexander v. Light*, 1996 U.S. Dist. LEXIS 20846 (W.D. Mich. 1996) (unpublished) (declining to extend service time when plaintiff had been notified of pending dismissal, ordered to show cause why the claim should not be dismissed, and failed to respond to the show cause order).

38.    Second, neither New York Magazine nor their co-Defendants, claim ignorance of Plaintiffs' lawsuit; quite the contrary, ___ Gottshalk admitted to the process server they already had a copy and were expecting service.  No Defendant argues that they will be prejudiced by an obligation to defend the claims against them; and the complaint itself was timely filed.  *See Henderson,* 517 U.S. at 659 (implying that timely filing, notice of the claim, lack of prejudice, and proper service when the service was finally achieved all weighed in favor of extending the 120-day time period).

39.    Third, Plaintiffs' counsel acted promptly to correct the flaw in service by filing a motion to extend the time for service on February 25, 2008, even though SDNY ECF system problems caused the notice of filing to be generated 19 minutes after midnight on February 26, 2008 (*see* ECF notice attached hereto as ==Exhibit __).==

40.    In addition, New York Magazine had actual notice of the claim as evidenced by the letter to sent to their Publisher and Editors on December 7, 2004 and a subsequent cease and desist letter pertaining to the copyright violations on January 11, 2005, (attached hereto as ==Exhibit __).==  While personal service is "the classic form of notice always adequate in any type of proceeding," due process is satisfied when the attempted service is "reasonably certain to

inform those affected." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). FOOTNOTE 3    THE LETTERS --- *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988) (no prejudice to defendant under Rule 4(j) where defendant had actual notice of plaintiff 's claim and facts on which it was grounded);*Benjamin v. Grosnick*, 999 F.2d 590, 592 (1st Cir.1993) (no prejudice under Rule 4(j) where defendant had actual notice of lawsuit); *Spencer v. Steinman*, ___ F. Supp.___, 1997 WL 359028, *3 (E.D. Pa. June 24, 1997) (noting that actual notice "is crucial" to determining prejudice to the defendant);

41.    District courts have consistently interpreted Rule 4(m) in the same way, treating the running of the statute of limitations as a factor favoring the plaintiff and not as a basis for potential prejudice to the defendant. *See, e.g.*, *Mason Tenders Dist. Council Pension Fund v. Messara*, 1997 WL 221200 *4-5 (S.D.N.Y. April 1, 1997); *Rose v. Forbes Metro. Hosp.*, 72 Fair Empl. Prac. Cas. (BNA) 549, 1996 WL 752530, *2-3 (W.D. Pa. Oct. 18, 1996); *National Union Fire Ins. Co. v. Forman 635 Joint Venture*, 1996 WL 272074, *3 (S.D.N.Y. May 21, 1996); Binicewicz v. General Elec. Co., 1995 WL 628425, *2-3 (N.D. Ill. Oct. 25, 1995); *Pickney v. Sheraton Soc'y Hill*, 1994 WL 376862, *3 (E.D. Pa. July 15, 1994); *Williams v. United Parcel Serv.*, 1991 WL 264651, *2 (N.D. Ill. Dec. 9, 1991).

42.    The icing on the cake is that the suit if dismissed could not be reinstated, the statute of limitations having expired after the complaint was filed, *see Panaras v. Liquid Carbonic Industries Corp.*, 94 F.3d 338, 341 (7th Cir. 1996); *Horenkamp v. Van Winkle & Co., supra*, 402 F.3d at 1133; *Mann v. American Airlines,* 324 F.3d 1088 (9th Cir. 2003); Committee Note, *supra*.  The dismissal of this case would amount to punishing Plaintiffs for something that did no harm to anyone and handing over the proceeds of their copyright infringement to a wrongdoer. United States v. **McLaughlin**, **470 F.3d 698** (7th Cir. 2006),

43.    Finally, as discussed above, Rule 4(m) itself approves an extension of the 120-day period when a claim otherwise would be barred by a statute of limitations.

44.    In light of these circumstances, Plaintiffs assert that the harsh sanction of dismissal would be unwarranted.  Defendants received notice sufficient to satisfy the requirements of due process.  For the foregoing reasons, the Rule 4(m) service period should be extended for an additional thirty days from the date of this order to permit Plaintiffs to perfect service on any Defendants.

**WHEREFORE,** plaintiffs request this Honorable Court reconsider its Order to Dismiss for failure to prosecute, reinstate the case to active status, and such further relief as be just and proper.

This 31sth day of March 2008,

_____s/_____
John Edwards Tiffany,
Attorney (JT7322)
*Counsel For Counter Terrorist Group US*
Law Offices of John E. Tiffany P.C.
The Robert Treat Center
50 Park Place, 10th Floor,
Newark, New Jersey 07102
Tel:  (973) 242-3700
Fax: (973) 242-3799
Mobile: (973) 454-9633
www.JohnTiffanyLaw.com
Email: Jet@Jet4Law.com