## UNITED STATES DISTRICT COURT
### For The Southern District Of New York

_____
                                              )
COUNTER TERRORIST GROUP US,                   )
COUNTERR GROUP, *and* J. K. IDEMA,            )        ECF
            *Plaintiffs,*                      )
                                              )        **Plaintiffs'**
        **v.**                                 )        **Amended Reply**
                                              )        **With Exhibits**
NEW YORK MAGAZINE;                            )
NEWYORKMETRO.COM;                             )
NEW YORK MAGAZINE HOLDINGS, LLC,             )        Case # 07 CIV 9516 (DAB)
LAWRENCE C. BURSTEIN,                          )
STACY SULLIVAN; JOSEPH A. CAFASSO;            )        **Assigned Judge:**
EDWARD A. ARTIS; TRACY PAUL                    )        Honorable Deborah A. Batts
WARRINGTON, TOD ROBBERSON; *et al.*           )
            *Defendants.*                      )
_____       )

### PLAINTIFFS' AMENDED REPLY TO DEFENDANTS' OPPOSITIONS TO MOTION FOR RECONSIDERATION OF DISMISSAL OF CASE AND MEMORANDUM OF LAW

Plaintiffs, hereby file their Amended Reply to Defendants' Opposition to Plaintiffs' Motion to Reconsider the Court's ORDER of March 10, 2008, dismissing the case.

### COUNSEL'S STATEMENT

The undersigned counsel left on vacation with his family in the Dominican Republic for Easter Vacation on March 20, 2008, prior to Defendant's counsel filing an appearance or responding.[1]  Mr. Idema was extremely ill during the time the Reply was being drafted.  Co-counsel was engaged in prosecutorial duties in New Jersey and other cases out of state.  Both counsels are sole practitioners—as compared to Defendants' counsel whose firms boast an impressive 1100+ attorneys.[2]  Although it was clearly supposed to, counsels' Blackberry would not work for either voice or email in the Dominican Republic.  I was the only attorney with actual knowledge of the events surrounding the service.  This motion was drafted over the phone at great effort and expense.  It was impossible to file to file the exhibits from the

_____

[1] Ms. Strom's letter of March 14, 2008 to the Court was not seen by counsel until today.
[2] Hogan & Hartson- "With more than 1,100 lawyers practicing in 22 offices worldwide" (http://www.hhlaw.com/aboutus/overview/).

Dominican Republic.  Counsel filed ECF filed a draft Reply on March 31, 2008, but not time-stamped until 2 minutes after midnight.  Counsel was in NYU Medical Center April 1 and 2, 2008. A supporting affidavit and letter requesting the Court allow this amended reply out of time more fully sets forth these events (Exhibit D, Affidavit of John E. Tiffany, ¶¶ 2-7).

### PRELIMINARY STATEMENT

1.      This case is not without merit.[3]  For example, **Exhibit A** contains two of the photographs published in the New York Magazine on October 25, 2004.  **Exhibit B** contains two of the Plaintiffs' copyrighted photographs.  They are identical.  New York Magazine paid Polaris Images for other photos that ran in the same article, but intentionally did not license the infringed photographs because they were obtained from their co-defendants through criminal conduct.  Although several registrations were not yet received[4] when the complaint was filed, the US Copyright Office retroactively issued two of them on February 25, 2008, and Plaintiffs received the originals on March 13, 2008.[5]  The new copyright certificates are attached hereto as **Exhibit C** (Reg. #s VAu755-440 & VAu755-449).[6]

2.      Plaintiffs submit that the Court should not dismiss this case both because there was good cause, and even absent good cause, the courts have found an extension to serve is warranted based upon other factors, all of which are present in the instant case.   Defendants violated Plaintiff's copyrights, evaded service of process, and now seek dismissal for failure to serve the complaint within 120 days.  Under Rule 4(m) of the Federal Rules of Civil Procedure, the 120 day provision should be extended.  Even without good cause that deadline should be extended when the Court considers the Fed. R. Civ. P. 4(m) Advisory Committee Notes to the 1993 Amendments because failure to do would result in the total loss of Plaintiff's claims due to the statute of limitations.

---

[3] Plaintiffs concede that 120 days from the of filing of the complaint is February 21, 2008, not February 25th, 2008 as previously believed and set forth in prior pleadings.

[4] Plaintiffs applied for 20 additional copyrights on April 19, 2005.  The US Copyright Office stamped the applications as received on June 15, 2005.  For the last two and a half years Plaintiffs' counsel and two other attorneys have spent considerable time tracking and following the registration process.  The copyrights are effective retroactively to June 2005.

[5] Plaintiffs would have filed an amended complaint shortly thereafter with the copyright certificates attached had the case not been closed.

[6] Plaintiffs are waiting for replacement certificate TX0005860241 / 2003-12-03, the actual book with cover and photos, but have attached a true and correct printout of the copyright listing in Exhibit C.

3.      Defendants submit that a clear case of copyright infringement should be dismissed because one defendant was served two days late, and the others four days late—but most Defendants could not be served on the weekend because their offices were closed and in spite of hiring a dozen investigators and servers they could not be located anywhere else.  New York does not allow service on Sundays, or on Saturdays for those that hold Saturday as their holy day.  Believing the deadline was Monday and unable to serve on Thursday or Friday, only Monday remained as an option. It would be a great injustice to permanently bar Plaintiffs claims because Defendants, who admit having the complaint prior to the 120 day expiration, now seek to avoid their liability for a delay which amounts to less than two work days late.

## EVASION OF SERVICE

4.      Counsel for Plaintiffs began the service of the summons and complaint on January 20th, 2008, 31 days prior to the actual 120 deadline. (*See* **Exhibit D**, Affidavit of attorney John Edwards Tiffany, ¶¶ 10-12). The process server coordinating service received the summonses and complaints to serve on or about January 25, 2008 (*see* **Exhibit E**, Mar. 31, 2008 Affidavit of Brooke Murphy, ¶¶ 2-3), and physically began to serve the complaint on February 20, 2008 after finding the last of the defendants (we only had an approximate location for Edward Artis) (*see* Ex. E, Mar. 31, 2008 Murphy affidavit ¶ 4, 15, 17-19).

5.      Plaintiffs had a genuine concern that once service was executed on any one Defendant, it would be extremely difficult to serve all of the remaining Defendants.  After considerable discussions between counsel and Plaintiffs, we believed it was necessary to locate all the Defendants before serving any one of them. By mid-February 2008, we were fairly sure we could locate all Defendants (Ex. E, Mar. 31, 2008 Murphy affidavit ¶¶ 4, 5, 12, 17, 19).  Plaintiffs' fears of evasion were justified, as the moment Tracy-Paul Warrington was first served other Defendants began to actively evade service.[7]  The failure to serve within the 120 days was caused by attempts by Sullivan, Warrington, Artis, and Robberson to conceal their locations and their desire for the clock to run.

6.      This case required more than a dozen process servers and private detectives throughout the United States and in foreign countries to effectuate service.  Defendants

---

[7] Plaintiffs did not know at the time that New York Magazine already had a copy of the complaint. (*see* **Exhibit F**, March 10, 2008 Brooke Murphy affidavit ¶ 14).

Sullivan, Artis, Warrington, and Cafasso went through extraordinary measures to conceal their whereabouts since the events set forth in the complaint, using a variety of alias names, misleading company names, forwarded phone numbers, and other methods of concealment.

7.    Plaintiffs spent more than $6,000 dollars in private investigator fees, process server fees, search fees, and legal fees just to locate and serve these defendants, and more than $25,000 to bring this case to this point.  Plaintiffs went to extraordinary lengths to serve defendants, *see* Mar. 31, 2008 Murphy affidavit, generally, and as more fully set forth below.

## Service on NY Mag

8.    In regard to the New York Magazine Defendants and Lawrence Burstein; in spite of the fact that NY Magazine Holdings, LLC (the owner of NY Magazine) changed its name, and failed to list a registered agent or its new address with the New York Secretary of State, a woman who presented herself as an attorney for New York Magazine accepted service.   Opposing counsel now claims the woman was only a human resources employee (Rachel Strom Declaration ¶ 3).  However, this unsupported hearsay statement by counsel is completely contradicted by investigator and process server Brooke Murphy (*see* Ex. F, Mar. 10, 2008 Murphy affidavit ¶¶ 12-15 and Ex. E, Mar. 31, 2008 Murphy affidavit ¶¶ 6-9).

9.    Opposing counsel accuses Plaintiffs' counsel of making the "blatantly false" statement[8] that Ms. Strom "discussed a discovery schedule with Plaintiffs' counsel" (Strom Declaration ¶ 11).  Contrary to this sordid accusation Ms. Strom did in fact leave a message that she wanted to discuss the "discovery schedule" (Ex. D, Tiffany Affidavit, ¶¶ 15-16). Plaintiffs' motion stated Ms. Strom "entered into communications with Plaintiffs' counsel." Plaintiffs submit that their statement was completely accurate— not false – Ms. Strom "entered into communications" through her messages.  This *ad hominem* attack was unnecessary and uncalled for and solely for the purpose of impugning counsel's integrity. Plaintiffs did not argue that Ms. Strom had waived any rights by leaving her messages, nor do Plaintiffs now assert their waiver.[9]

---

[8] Plaintiffs' Motion actually stated "Defendants outside counsel has already entered into communications with Plaintiffs counsel to set a discovery schedule."

[9] However, *see* Affidavit of John Edwards Tiffany ¶ 13 The New York Magazine Chief Operating Officer did agree to accept service and was advised of the motion to be filed in advance of filing and asked for objections.

10.     The New York Magazine Defendants, Lawrence Burstein, and the other Defendants had prior knowledge of the suit.  Jocelyn Gottschalk admitted to this fact (*see* Ex. F, Mar. 10, 2008 Murphy affidavit ¶ 14 and Ex. E, Mar. 31, 2008 Murphy affidavit ¶¶ 7-9). Further, Mr. Idema had given these Defendants notice of the suit on December 7, 2004 (Complaint ¶¶ 28-31) when he first learned of the copyright infringement, and again on January 11, 2005 via three page letter outlining the causes of action (Exhibit G).  Upon information and belief, Warrington also knew that a suit had been filed according to the process server that finally located him.  Edward Artis also had knowledge of the suit (*see* Ex. E, Mar. 31, 2008 Murphy affidavit ¶ 17-18).

### Service on Stacy Sullivan

11.     Like the other Defendants, Ms. Sullivan has chosen not to file a statement of events under oath, instead relying on her attorney to give Ms. Sullivan's version.  Ms. Sullivan was finally served twice, after evading service at her apartment.  Now, through her attorney, Ms. Sullivan continues to evade service by claiming that the summons and complaint were left in the lobby of her building, when, in reality, she was personally served in her offices on the 34th floor, and a second service was made on her security detail while she present— but hiding (*see* Ex. E, Mar. 31, 2008 Murphy affidavit ¶¶ 13-16).  Contrary to Ms. Strom's assertion that one service attempt was followed by mail ("an affidavit of service was filed" Strom Declaration ¶ 4, emphasis added)— two summonses were executed— the Murphy executed summons for personal service was curiously excluded from Defendants Response showing that evasion and misrepresentations continue even now.  Based on the evidence Plaintiffs already had, Sullivan's misrepresentations were to be expected.

### Service on Edward Artis

12.     Edward Artis was clearly trying to evade service.  First, by distributing false information on the internet and to associates that he had moved to the Philippines to avoid this suit.  Second, by actually hiding when service was attempted (*see* Ex. E, Mar. 31, 2008 Murphy affidavit ¶ 17-18).

### Service on Tracy-Paul Warrington

13.     As stated in the response by Mr. Warrington's counsel, Plaintiffs do not assert that Warrington actively tried to hide or evade service when he answered his door for the

process server.  However, Warrington did make it extremely difficult to ascertain he was actually at that location and used other means prior to service to avoid being located (*see* Ex. E, Mar. 31, 2008 Murphy affidavit ¶ 19).  Upon information and belief, Warrington did warn the others that process servers were now serving Defendants around the country.

## **REPLY ARGUMENT**

### I.   PLAINTIFFS' MOTION DID COMPLY WITH LOCAL RULE 6.3

14.    Defendants request that Plaintiffs' Motion to Reconsider be denied without consideration because it "*completely fails to comply with the Local Rules...*" because "… *Plaintiffs failed to provide a notice of motion or a memorandum of law as required by Rules 6.3 and 6.1...*" because *"...despite Plaintiffs awareness that the NYM Defendants are being represented by the undersigned counsel,*[10] *Plaintiffs completely failed to serve the NYM Defendants with any of the papers..."* (New York Magazine Response, pg 5-6).

15.    Rule 6.1 of the Local Rules of the Southern District of New York provides for the following:

> **Local Civil Rule 6.1. - Service and Filing of Motion Papers**
>
> (b) On all civil motions, petitions, applications, and exceptions other than those described in Rule 6.1(a), and other than petitions for writs of habeas corpus,
> (1) the notice of motion, supporting affidavits, and memoranda of law shall be served by the moving party **on all other parties that have appeared in the action**, [emphasis added]
> (2) any opposing affidavits and answering memoranda shall be served within ten business days after service of the moving papers, and
> (3) any reply affidavits and memoranda of law shall be served within five business days after service of the answering papers.

16.    Neither Ms. Strom, nor any other counsel for any Defendant had appeared in the action when the motion was filed.  Nor had any counsel, including Ms. Strom filed a notice of appearance when Ms. Strom wrote her first letter to the Court advising Chambers that she would be filing a response.  Even now, Ms. Strom has made it clear in her response that she

---

[10] Plaintiffs counsel personally takes exception to footnote #2 in Ms. Strom's Response, which purports to outline her version of the communications, and categorically denies that it is the correct recounting of the actual events.  Be that as it may, it is a conflict in memories of events which need not be addressed at this juncture.  *See* Affidavit of John Edwards Tiffany ¶ 15, *see also*, Tiffany Aff. Ex. 7.

has only tentatively "specially appear[ed]" (New York Magazine Response, pg. 2, ¶ 1).  The rules appear clear, service is only required upon a party that has appeared.  Our understanding of this rule is that a party or their attorney must enter a formal notice of appearance before service is required by either ECF or mail.  Plaintiffs advised the Court of this in *fn* 3 of their Motion and emailed for objections the proposed relevant text of the motion to Ms. Taylor.  For the purpose of brevity, and due to the time constraints, Plaintiffs counsel did not feel a separate memorandum of law was necessary where the law was well established and where the motion contained only the rule in which it was filed under and two cites.  Finally, absent an appearance by Ms. Strom or any other counsel, Plaintiffs had no reason to believe that Rachael Strom had been formally retained, was actually representing Defendants, or even was an attorney based on the prior misrepresentations by New York Magazine employee Jocelyn Gottschalk who had claimed she was their attorney, and Chief Operating Officer, Kit Taylor who also claimed Ms. Gottschalk was their attorney (*see* Ex. F, Mar. 10, 2008 Murphy affidavit ¶¶ 12-14, 18, and Ex. E, Mar. 31, 2008 Murphy affidavit ¶¶ 6, 8, 10).

## II.  THE COURT DID OVERLOOK A REQUIREMENT OF RULE 4(M) DISMISSAL

17.    Defendants' oppositions assert that nothing was overlooked by the Court, so no motion for reconsideration can be considered (NY Magazine opposition at page 5, ¶ 3) is incorrect. Defendants tried to sweep this under the carpet by misquoting the rule as:

> "Fed. R. Civ. P. 4(m) provides
> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, **the court...shall dismiss the action...**provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."
> (Footnote 2, Warrington Opposition, emphasis added)

18.    However, a cursory reading of the rule and legal standard reveals that Rule 4 (m) of the Federal Rules of Civil Procedure actually states:

> "[if] service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, **upon motion or on its own initiative *after notice to the plaintiff,*** shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."

19.    "[A]fter notice to the plaintiff" was curiously left out of Defendants' quotation, distinguishing this case from others where dismissal was warranted because the plaintiff had been given notice of the deficiency. *Hairston v. New York State*, Not Reported in F.Supp.2d, 2005 WL 3199436 (S.D.N.Y. 2005) stating "More than 120 days having passed from the filing of the amended complaint, **and the Court having advised plaintiff of his obligations under Fed.R.Civ.P. 4(m),** and there being no indication that plaintiff has had the complaint served on defendants, … I recommend that the Court dismiss plaintiff's complaint without prejudice for failure to timely serve it …" (emphasis added).

### III.    THE TIME TO SERVE SHOULD BE EXTENDED UNDER RULE 4M FOR GOOD CAUSE OR IN THE ALTERNATIVE, A DISCRETIONARY EXTENSION IS WARRANTED

20.    As the Supreme Court observed, Rule 4(m) [ ... ] permits a district court to enlarge the time for service *'even if there is no good cause shown'* " *Henderson v. United States*, 517 U.S. 654, 658 n. 5 116 S.Ct. 1638, 134 L.ed.2d 880 (1996) (emphasis in original) (quoting Advisory Committee's Notes on 1993 Amendments to Fed. Rule Civil Proc. 4). *See also, Scruggs v. Spartanburg Regional Medical Center*, 198 F.3d 237, 1999 WL 957698 (C.A.4 (S.C.)) (In *Scruggs*, the plaintiff also received notice before dismissal).

21.    And, unlike those cases where no affirmative steps were taken whatsoever to effectuate service in a timely fashion, *see Hutchinson*, 2003 WL 22056997, *11; *Point-Dujour v. United States Postal Service.*, No. 02 Civ. 6840, 2003 WL 1745290, *3 (SDNY March 31, 2003), Plaintiffs started service on Defendants more than a month in advance and accomplished service on all Defendants between one and two days late (excluding Saturday and Sunday), and therefore should be granted a *nunc pro tunc* extension of time, making the February 22 thru 25th, 2008 services effective. *Reese v. University of Rochester,* No. 04-CV-6117 (FE), 2005 WL 1458632 (W.D.N.Y. June 25, 2005) (Plaintiff's attorney delivered copies of the summons and complaint to process server before the 120 day deadline and even without good cause found plaintiff was "entitled to a discretionary extension" Id. at *1). *See also, Carroll v. Certified Moving & Storage, Co., LLC,* No. 04-CV-4446 (ARR), 2005 WL 1711184, *2 (E.D.N.Y. July 19, 2005) (collecting cases).

22.     Even if the Court concludes Plaintiffs failed to make the requisite showing of good cause a discretionary extension is warranted and must be considered. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086,1098 (3d Cir. 1995), cert. denied, 117 S. Ct. 64 (1996).  This was the question reviewed in *Ziegler v. Glaxo Smith Kline,* (WDNY 2004), where the court determined plaintiff was entitled to a *nunc pro tunc* extension of time because following the 1993 Amendments to Rule 4(m), courts were permitted to extend the 120-day time limit even when a plaintiff shows no good cause.   *See also*, *Henderson v. United States*, 517 US 654, 658 n5 (1996). "[R]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Adv. Comm. Notes to Fed. R. Civ. P. 4(m).

23.     Here, Plaintiffs assert that they will face a statute of limitations barrier and will not be able to refile the complaint if the court dismisses the case pursuant to Rule 4(m). Although this reason alone is not, by itself, sufficient in every case to warrant the discretionary extension, it does weigh in plaintiff's favor under circumstances in this case. *See Buckley v. Doha Bank Ltd.*, No. 1 Civ. 8865, 2002 WL 1751372, at *3.  In drafting the amendment of Rule 4(m), the Advisory Committee plainly had in mind, as its Notes state,

> "The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. . . . Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action . . . ." Fed. R. Civ. P. 4(m) Adv. Comm. Notes (1993) (emphasis added).

Interpreting this rule, under which the court may extend the time for service to avoid the bar of limitations, to authorize the court to refuse to extend it so the defendant may gain the benefit of that bar appears to be inconsistent with its purpose. *See*, *e.g.*, *Goodstein v. Bombardier Capital, Inc.*, 167 F.R.D. 662, 666-67 (D. Vt. 1996) (extending time in part to prevent plaintiff's case from being barred).

24.     Neither Idema nor Counterr Group (the joint copyright holders), were in any way at fault for the delay, but they would be the parties to suffer from a dismissal.  No

Defendant has claimed they were prejudiced in any way by the two to four day delays in service, and the delay was certainly not intentional.  Given that, Congress clearly intended that a "court would undoubtedly permit such a plaintiff additional time within which to effect service." *1982 U.S. Code Cong. & Admin. News* at 4442.

## IV.    PLAINTIFFS WOULD BE UNDULY AND PERMANENTLY PREJUDICED BY DISMISSAL

25.    Federal Rule of Civil Procedure 4(m) allows a court to extend the time for service "if the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m).  However, as in the instant case, even without a plaintiff's showing of good cause, an extension is appropriate when "the applicable statute of limitations would bar the refiled action." Fed. R. Civ. P. 4(m) Adv. Comm. Notes to 1993 Amends. (citing *Ditkof v. Owens-Illinois*, Inc., 114 F.R.D. 104 (E.D. Mich. 1987)).  *See also Henderson v. United States*, 517 U.S. 654, 658 n. 5 (1996) (noting that Rule 4(m) permits an extension even in the absence of good cause).

26.    In this case, the statute of limitations has run. Under both federal and state law, a cause of action accrues when the injury occurs or when a reasonable person should have known or had reason to know of the injury. *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1975); *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir. 1984).  A cause of action for Copyright Infringement and/or Contributory Copyright Infringement normally accrues upon first publication of the infringing photographs.  In this case, New York Magazine and their co-Defendants first published the infringing photographs on October 25, 2004. Although Plaintiffs were not immediately aware of the October 25, 2004 infringement, the tolling for discovery does not offer safe haven for these Plaintiffs in the instant case.  A dismissal now would forever dismiss Plaintiffs' copyright claims against each of the Defendants, because the three-year statute of limitations ran on October 25, 2007.[11]

27.    District courts have consistently interpreted Rule 4(m) in the same way, treating the running of the statute of limitations as a factor favoring the plaintiff and not as a basis for potential prejudice to the defendant. *See, e.g.*, *Mason Tenders Dist. Council Pension Fund v. Messara*, 1997 WL 221200 *4-5 (S.D.N.Y. April 1, 1997); *Rose v. Forbes Metro. Hosp.*, 72 Fair Empl. Prac. Cas. (BNA) 549, 1996 WL 752530, *2-3 (W.D. Pa. Oct. 18, 1996); *National*

---

[11] Title 17, Section 506(a) of the United States Copyright Laws

*Union Fire Ins. Co. v. Forman 635 Joint Venture*, 1996 WL 272074, *3 (S.D.N.Y. May 21, 1996); Binicewicz v. General Elec. Co., 1995 WL 628425, *2-3 (N.D. Ill. Oct. 25, 1995); *Pickney v. Sheraton Soc'y Hill*, 1994 WL 376862, *3 (E.D. Pa. July 15, 1994); *Williams v. United Parcel Serv.*, 1991 WL 264651, *2 (N.D. Ill. Dec. 9, 1991).

28.    Plaintiffs would be able to refile their state law claims within one year of the dismissal under North Carolina law, however under this Court's dismissal they would not. The inability to replead these claims bars Plaintiffs' state law claims because the statute of limitations would not be tolled. *See Favia v. Bronx Council of the Arts,* No. 93 Civ. 5936, 1995 WL 358750, at *2 (S.D.N.Y. June 14, 1995).

29.    This is not a "relation-back" scenario in which Plaintiffs seek add defendants in new capacities, although Plaintiffs were going to amend the complaint after service with the copyright registrations attached based upon this Court's ruling in *Kenny v. Ryan Web Solution, LLC*, Not Reported in F.Supp.2d, 2005 WL 1719878 (S.D.N.Y.), requiring registrations to be attached to a complaint (Exhibit C).  In other cases, even where the statute of limitations would have expired, the Court has either allowed the case to be re-opened, or granted plaintiff leave to refile, *Tooker v. Copley,* 1987 WL 124315 (S.D.N.Y.1987) (court dismissed complaint without prejudice and granted plaintiff leave to refile complaint); *Conan Properties, Inc. v. Mattel, Inc.,* 601 F.Supp. 1179, 1182 (S.D.N.Y.1984) (court dismissed copyright infringement claims, other than those where the registered copyright were attached to complaint, and granted plaintiff leave to replead those claims); *Charron v. Meaux,* 60 F .R.D. 619, 624 (S.D.N.Y. 1973) (court granted leave to replead copyright claims "since there has been no showing that correction of the defect ... would prejudice defendants").

30.    Nor is there any mistake in the parties named.[12] Accordingly, the motion falls within the *Ditkof* and *Henderson* line of cases, and the court may, at its discretion, extend the 120-day period for a reasonable time to permit proper service.  *See Henderson,* 517 U.S. at 662-663.

---

[12] In spite of the fact that NY Magazine Holdings LLC changed its name but did not  notify the Secretary of State of New York  (*see* Ex. F, March 10, 2008 Murphy affidavit ¶¶ 2, 3, 5)

**V.    PLAINTIFFS FILED FOR AN EXTENSION ON FEBRUARY 25TH 2008 WITH THE GOOD FAITH BELIEF THE TIME TO REQUEST AN EXTENSION HAD NOT YET EXPIRED**

31.    Defendants' Opposition asserts that Plaintiffs did not file for an extension of time to serve until February 26, 2008.  However, while on its face this is technically correct, other factors should be considered by this Court.  Believing in good faith that the time to serve Summons and Complaint was midnight February 25, 2008, Plaintiffs counsel logged onto the SDNY ECF system before midnight February 25, 2008 and attempted to file for the extension.  Having difficulty with the filing (unable to upload the actual document), counsel continued to repeatedly try to file electronically.  Finally, the system accepted the document and logged it into the Court's system at 19 minutes after midnight.  A review of the ECF login records confirm this, as does the receipt received via email from the EC Clerk at 00:19 am EST on February 26, 2008 (attached hereto as Exhibit H).  This 19 minute delay did not prejudice Defendants in any way, nor was it an intentional or negligent delay by counsel.

**V.    DEFENDANTS HAVE SHOWN EVASIVENESS EVEN IN THEIR OPPOSITION**

32.    As evidenced by the Gottschalk bait and switch (posing as an attorney—is now a human resources employee) it appears Defendants continue to take affirmative steps to mislead Plaintiffs and this Honorable Court.  It is clear that Defendants attempted to lull Plaintiffs into believing service was proper, as set forth in the affidavits of Brooke Murphy, Ex. E ¶¶ 6, 8, 9, Ex. F, ¶¶ 12-18) Many cases warn defendants that they may not lull plaintiffs into believing service has been accomplished.  *Vance v. U.S.*, 126 F.R.D. 14 (E.D.N.Y. 1989); *Gordon v. Hunt*, 116 F.R.D. 313 (S.D.N.Y. 1987); *Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104 (E.D. Mich. 1987).

33.    Stacy Sullivan's counsel makes a hearsay assertion that Sullivan was served just once by mail after a copy was left in the buildings' lobby (Strom Declaration ¶ 4); as compared to the direct knowledge statement of Brooke Murphy, who states under oath he personally served Sullivan even though she ran away.

34.    In the case of Stacy Sullivan, contrary to opposing counsel's reliance on *Pearson v. Board of Educ. of City of New York,* No. 02 Civ. 3269 (RCC), 2004 WL 2297354, at *4 (S.D.N.Y. Oct. 12, 2004) (under New York law, "leaving a summons and complaint with an individual's secretary when the individual is not present does not constitute personal

service" *emphasis added*) (citing CPLR § 308), Ms. Sullivan <u>was present</u>, and both process servers confirmed she was present.  Brooke Murphy identified her as the individual depicted in the investigative report he had, and compared her picture to the person who appeared at the security office and was served by him (Ex. E, Mar. 31, 2008 Murphy affidavit ¶ 14).

35.    It took five different process servers to locate and serve Tod Robberson.  He consistently evaded service. He was first served while giving a foreign affairs speech (the only place he could be located at)— although his counsel tried to claim Robberson had been served at a synagogue during services— a completely false assertion.  In reality, Robberson was giving a political speech at a men's club (Ex. D, Tiffany affidavit ¶ 14).  It is clear that a defendant who evades service cannot then argue that service was not timely. *1982 U.S. Code Cong. & Admin. News* at 4434, 4446 n. 25; 96 F.R.D. at 122 n. 25.

36.    Finally, the remaining assertions by Defendants that they would move to dismiss on the grounds of statute of limitations, failure to state a claim, and jurisdiction are without merit.  As set for above, the complaint was filed before the three year statute of limitations, copyright certificates have been received by Plaintiffs, the infringed photographs are identical, and the federal courts have exclusive jurisdiction over copyright.

## CONCLUSION

37.    To determine whether plaintiff has established good cause for failure to serve process timely, the courts consider whether plaintiff diligently made reasonable efforts to effect service, whether plaintiff moved under Fed. R. Civ. P. 6(b) to extend the time to serve the defendant and whether the defendant is prejudiced by the delay. *See Gordon v. Hunt*, 835 F2d 452, 453 (2d Cir. 1987).  All of these factors weigh heavily in Plaintiffs' favor.

38.    First, the dismissal of the case, even without prejudice would completely obliterate any chance of justice for the Plaintiffs as re-filing would be beyond the statute of limitations.  Plaintiffs should not be injured by defendants who have been obstructive, evasive, and engaged in wrongful acts to subvert justice.

39.    While "mere inadvertence, neglect or mistake of a litigant's attorney' will not constitute good cause," nevertheless, it still is appropriate to extend the time for service in this case, *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt. L.P.*, 197 FRD 104, 108

(SDNY 2000).  First, Defendants' Response[13] was the first notice Plaintiffs received that there was any problem with service on Defendants.  In *Cf. Alexander v. Light*, 1996 U.S. Dist. LEXIS 20846 (W.D. Mich. 1996) (unpublished), the court declined to extend service time when plaintiff had been notified of pending dismissal, ordered to show cause why the claim should not be dismissed, and failed to respond to the show cause order-- converse from this case, where Plaintiffs were never noticed of the dismissal, or ordered to show cause, or failed to respond to an order.

40.    Second, neither New York Magazine nor their co-Defendants, claim ignorance of Plaintiffs' lawsuit; quite the contrary, Jocelyn Gottschalk admitted to the process server they already had a copy and were expecting service.  No Defendant argues that they will be prejudiced by an obligation to defend the claims against them; and the complaint itself was timely filed.  *See Henderson,* 517 U.S. at 659 (implying that timely filing, notice of the claim, lack of prejudice, and proper service when the service was finally achieved all weighed in favor of extending the 120-day time period).

41.    Third, Plaintiffs' counsel acted promptly to correct the flaw in service by filing a motion to extend the time for service on February 25, 2008, even though SDNY ECF system problems caused the notice to be generated 19 minutes late (*see* ECF notice- Exhibit H).

42.    Fourth, New York Magazine had actual notice of the claims as evidenced by the letters sent on December 7, 2004 and on January 11, 2005, (Exhibit G).  While personal service is "the classic form of notice always adequate in any type of proceeding," due process is satisfied when the attempted service is "reasonably certain to inform those affected." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  By and through these letters, and by their own admission that they already had the complaint, New York Magazine was clearly informed of the suit weeks if not years before.  *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988) (no prejudice to defendant under Rule 4(j) where defendant had actual notice of plaintiff 's claim and facts on which it was grounded); *Benjamin v. Grosnick*, 999 F.2d 590, 592 (1st Cir. 1993) (no prejudice under Rule 4(j) where defendant had actual notice of lawsuit); *Spencer v. Steinman*, ___ F. Supp.___, 1997 WL 359028, *3

---

[13] And Rachel Strom's letter received by co-counsel, indicating they intended to file an opposition.

(E.D. Pa. June 24, 1997) (noting that actual notice "is crucial" to determining prejudice to the defendant);

43.    This case, if dismissed could not be reinstated, the statute of limitations having expired after the complaint was filed, *see Panaras v. Liquid Carbonic Industries Corp.,* 94 F.3d 338, 341 (7th Cir. 1996); *Horenkamp v. Van Winkle & Co., supra,* 402 F.3d at 1133; *Mann v. American Airlines,* 324 F.3d 1088 (9th Cir. 2003); Committee Note, *supra.* Dismissal would amount to punishing Plaintiffs for something that did no harm to anyone and handing over the proceeds of their copyright infringement to a wrongdoer. *United States v. McLaughlin*, 470 F.3d 698 (7th Cir. 2006).

44.    Finally, as discussed above, Rule 4(m) itself approves an extension of the 120-day period when a claim otherwise would be barred by a statute of limitations. In light of these circumstances, Plaintiffs assert that the harsh sanction of dismissal would be unwarranted.

**WHEREFORE,** Plaintiffs request this Honorable Court reconsider its Order to Dismiss for failure to prosecute, that the service of the Summons and Complaint be deemed *nunc pro tunc*, reinstate the case to active status, and such further relief as be just and proper.

This 2nd day of April 2008,

_____s/_____
John Edwards Tiffany,
Attorney (JT7322)
*Counsel For Counter Terrorist Group US*
Law Offices of John E. Tiffany P.C.
The Robert Treat Center
50 Park Place, 10th Floor,
Newark, New Jersey 07102
Tel: (973) 242-3700
Fax: (973) 242-3799
Mobile: (973) 454-9633
www.JohnTiffanyLaw.com
Email: Jet@Jet4Law.com

# Exhibit List

A    Photos Published by Defendants in NY Magazine October 25, 2004

B    Photos Copyrighted by Plaintiffs

C    Registrations Issued by the US Copyright Office to Plaintiffs

D    Affidavit of Attorney John Edwards Tiffany (dated April 2, 2008)

E    Affidavit (Second) of Brooke Murphy (dated March 31, 2008)

F    Affidavit (First) of Brooke Murphy (dated March 10, 2008)

G    Jack Idema Letter to New York Magazine (dated January 11, 2005)

H    ECF Motion Notice





**Top Left:**       NY Magazine Cover-
                   Publication Date Oct 25, 2004.

**Top Right:**     Copyright Reg # VAu755-440
**Bottom Left:**   Copyright Reg # VAu755-449
**Bottom Right:**  Copyright Reg # TX0005860241







Book Photo Top
Published
by NY Mag-
Book Photo
Bottom
Derivative Work
Copyrighted
Prior to
publication-
# TX0005860241

New York Magazine Published Photos

**Exhibit A - Photos**

Attached to Copyright Form –
"Task Force SABER 7 With EPW MONK"
aka "EPW2766 Surgery Photo"



Attachment to Copyright Form –
"Task Force SABER 7 and Task Force 180 -
Massoud Chopper on Liberation Day"
aka "TF SABER 7 and TF180 Riding
Massoud's Chopper on Muj Day – April 2004"





[Plaintiffs' Photographs]

**Exhibit B – Photos**

[Copyright Registrations w/Attachments]

**Exhibit C – Registrations**

9197762333                                      p.24

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form VA**
For a Work

VAu 755 – 440

EFFECTIVE DATE OF REGISTRATION

**JUN 15 2005**

Month            Day            Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**Title of This Work ▼**

TASK FORCE SABER 7 With EPW MONK

**NATURE OF THIS WORK ▼** See Instructions

Photograph

**Previous or Alternative Titles ▼**

EPW2766 Surgery Photo - May 2004

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼          Number ▼          Issue Date ▼          On Pages ▼

---

**NAME OF AUTHOR ▼**

Jack Idema aka JK Idema

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼
1956

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of **United States**
Domiciled in **United States**

Was This Author's Contribution to the Work
Anonymous?     ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate boxes. **See Instructions**
☐ 3-Dimensional sculpture      ☐ Map                    ☐ Technical drawing
☐ 2-Dimensional artwork        ☑ Photograph             ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design         ☐ Architectural work

**Name of Author ▼**

Counterr Group - employer for hire of Captain Brent Bennett

**Dates of Birth and Death**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of **USA**
Domiciled in **USA**

Was This Author's Contribution to the Work
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate boxes. **See Instructions**
☐ 3-Dimensional sculpture      ☐ Map                    ☐ Technical drawing
☐ 2-Dimensional artwork        ☐ Photograph             ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design         ☐ Architectural work

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

---

**Year in Which Creation of This Work Was Completed**
2004
This information must be given in all cases.

**Date and Nation of First Publication of This Particular Work**
Complete this information Month          Day          Year          Nation
ONLY if this work has been published.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

J. K. Idema & Counterr Group (
PO Box 691, Fayetteville, NC 28302-0691

: by *written* agreement)

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
**JUN 15 2005**
ONE DEPOSIT RECEIVED
**JUN 15 2005**
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.          • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages

See instructions before completing this space.

EXAMINED BY _____ *[signature]*          FORM VA

CHECKED BY _____

☑ CORRESPONDENCE
   Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

*See instructions before completing this space.*

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼          **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

William London III, Attorney, c/o PO Box 152, Sanford, NC 27331

Area code and daytime telephone number   ( 919 ) 774-3808          Fax number   ( 919 ) 776-2333

Email   skip0628@hotmail.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Jack Idema                                    Date   April 19, 2005

**Handwritten signature (X)** ▼

X _____ *[signature]*

Certificate will be mailed in window envelope to this address:

**Name** ▼
William London III, Attorney At Law

**Number/Street/Apt** ▼
c/o PO Box 152

**City/State/ZIP** ▼
Sanford, NC 27331

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to *Register of Copyrights*
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: August 2003—30,000   Web Rev: June 2002   ℗ Printed on recycled paper

U.S. Government Printing Office: 2003-496-605/60,029

**Attachment to Copyright Form –
"Task Force SABER 7 With EPW MONK"
aka "EPW2766 Surgery Photo"**



**This Picture is Being Copyrighted as is as the Only Version
With the Paint Shop Notation Placed by Author**

9197762333                                    P.6

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form VA**

**VAu 755 – 449**

EFFECTIVE DATE OF REGISTRATION

**JUN 15 2005**
Month     Day     Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**Title of This Work ▼**

TF SABER 7 and Task Force 180 - Massoud Chopper - On Liberation Day

**NATURE OF THIS WORK ▼** See instructions

Photograph

**Previous or Alternative Titles ▼**

TF SABER 7 and TF180 Riding Massoud's Chopper on Mui Day – April 2004

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**NAME OF AUTHOR ▼**

Jack Idema aka JK Idema

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼
1956

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of **United States**
     Domiciled in **United States** }

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate boxes. **See instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☒ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**Name of Author ▼**

Counterr Group

**Dates of Birth and Death**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of **USA**
     Domiciled in **USA** }

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate boxes. **See instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☒ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

**Year in Which Creation of This Work Was Completed**

2004

This information must be given Year in all cases.

**Date and Nation of First Publication of This Particular Work**
Complete this information Month _____ Day _____ Year _____
ONLY if this work has been published.

Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

J. K. Idema & Counterr Group (
PO Box 691, Fayettville, NC 28302-0691

by written agreement)

See instructions before completing this space.

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
**JUN 15 2005**
ONE DEPOSIT RECEIVED
**JUN 15 2005**
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶**    • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

EXAMINED BY  _wlb_

CHECKED BY

☑ CORRESPONDENCE
   Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                               **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

William London III, Attorney, c/o PO Box 152, Sanford, NC 27331
Email to either:  skip0628@hotmail.com  -and-  tfsaber7@earthlink.net

Area code and daytime telephone number  ( 919 ) 774-3808                    Fax number  ( 919 ) 776-2333

Email  skip0628@hotmail.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Jack Idema                                               Date  April 19, 2005

**Handwritten signature (X)** ▼

X _____

| Certificate will be mailed in window envelope to this address: | **Name** ▼ William London III, Attorney At Law |
| --- | --- |
| | **Number/Street/Apt** ▼ c/o PO Box 152 |
| | **City/State/ZIP** ▼ Sanford, NC 27331 |

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Copyright Office
Library of Congress
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: August 2003—30,000    Web Rev: June 2002    ⊛ Printed on recycled paper                    U.S. Government Printing Office: 2003-496-605: 60,029

**Attachment to Copyright Form –**
**"Task Force SABER 7 and Task Force 180 - Massoud Chopper on Liberation Day"**
**aka "TF SABER 7 and TF180 Riding Massoud's Chopper on Muj Day – April 2004"**







| Help | Search | History | Titles | Start Over |

**Task force dagger : the hunt for Bin Laden : the inside story of special...**

|  |  |
|--|--|
| **Type of Work:** | Text |
| **Registration Number / Date:** | TX0005860241 / 2003-12-03 |
| **Application Title:** | The hunt: task force dagger. |
| **Title:** | Task force dagger : the hunt for Bin Laden : the inside story of special operations forces in the war on terror. |
| **Edition:** | British ed., Updated Apr. 21, 2003. |
| **Imprint:** | [UK] : Macmillan, 2003. |
| **Description:** | Sheets. |
| **Copyright Claimant:** | J. K. Idema, 1956- |
| **Date of Creation:** | 2003 |
| **Date of Publication:** | 2003-08-15 |
| **Previous Registration:** | Prev. reg. 2002, TXu 1-060-702. |
| **Basis of Claim:** | New Matter: changed version. |

|  |  |
|--|--|
| **Variant title:** | Task force dagger : the hunt for Bin Laden |
| **Other Title:** | The hunt: task force dagger |
| **Names:** | Idema, J. K., 1956- |



**Note to This page of Exhibit:** A version of this cover and cover photograph was copyrighted with both TX versions which were issued copyrights. The actual page provided to the copyright office with the 2003 application is not yet available. It may include modified or additional text.

**Affidavit of John Edwards Tiffany
Filed Separately Due to Size**

**Exhibit D – Tiffany Affidavit**

**Second Affidavit of Brooke Murphy**
**March 31, 2008**
**Filed Separately Due to Size**

**Exhibit E – Murphy Affidavit #2**

**First Affidavit of Brooke Murphy**
**March 10, 2008**
**Filed Separately Due to Size**

**Exhibit F – Murphy Affidavit #1**

# JK IDEMA
PO Box 691 - Fayetteville, NC 28302-0691

Lawrence C. Burstein                      January 11, 2005
Publisher                                 Via Fax
New York Magazine                         Second Demand to
New York Magazine Holdings, LLC           December 7, 2004 Letter
444 Madison Avenue
New York, NY 10022-6999

Regarding:    Our Con Man in Kabul?
Reference:    Idema, et al., vs. New York Magazine Holdings, LLC, et al.
Subject:      Errors, Interference with Economic Perspective, and Copyright
              Violations, etc.

Dear Mr. Burstein,

As stated in my letter of December 7, 2004, to which neither I nor my attorneys have had any
response, I think the question here is exactly who is the real con man? Or should I say con
woman—since it appears her name is Stacy Sullivan. Polaris Images has just confirmed that
you DID NOT license the photos which appeared in your Magazine and which belonged to me.

What will be interesting to see is what a jury thinks. Your failure to respond to my letters makes
it clear you do not want to resolve these issues without litigation, as I sincerely doubt you either
regret the article, the insinuations, the outright lies, fraud, and vitriolic onslaught your magazine
engaged in. I have addressed the false statements in Sullivan's article, separately, but primarily,
what I would like to focus on at the moment is the actual causes of action Ms. Sullivan had
managed to accrue so far. As a starter, the list of civil torts and criminal conduct that Ms.
Sullivan and/or the New York Magazine has engaged in includes, but is not limited to:

1. Copyright Infringement
2. Contributory Copyright Infringement
3. Conspiracy to Infringe Copyright (& Civil Conspiracy)
4. Obtaining Property Under False Pretenses
5. Misappropriation of intellectual property
6. Tortuous Interference with Economic Perspective
7. Unfair and Deceptive Trade Practices

I implore you to resolve these issues without litigation, but make no mistake, I will file suit if this
matter cannot be completely resolved.

Ms. Sullivan revels in her description of me as a con man. But, the copyrighted protected
pictures you used without proper licensing are mine. You neither had rights to them, nor to the
CBS frame grab you used in which you tried to blur the CBS logo. Trying to 'con'' your readers
huh? CBS does not even have the right to license that photo to you!

I request that you pass this letter to your General Counsel and Legal Section.

**Exhibit G - Idema Ltr**

# JK IDEMA

PO Box 691 - Fayetteville, NC 28302-0691

Apparently your photo editor, Cory Jacobs, and your rights and clearances people, have either no concept of copyright law, or simply no regard for it. It is my understanding, that New York Magazine was covertly supplied original photos which are all copyright protected.

Therefore, you have engaged in a series of torts, including, but not limited to, contributory copyright infringement, copyright infringement, conspiracy to infringe copyright, and tortuous interference with economic perspective.

The tortuous interference with economic perspective arises from Ms. Sullivan's impugning of the integrity of the *8mm VideoX al-Qaida tapes*, which you so eloquently state in your tag line on page 2 "may have been faked." But in the body of the article, you not only accuse me of faking them, you assert that the CIA did a voice analysis. That actually had me laughing for a moment. Is your reporter so stupid as to think the CIA has time to voice analyze tapes for the media, when they don't even have enough time and experts to analyze 20% of the NSA monitored conversations of known *al-Qaida* operators and operations? Do you actually think that any part of the US government would admit such a thing as saying the tapes were fake, or even talk about such a thing? Sullivan completely fabricated this and you printed it.

The bottom line is this; I request you provide me with copies of licenses and contracts for the photos you used. Since I know you don't have permission for all of the photos, and since I know how you really got them (through he illegal interception of private emails), and since you are in complete violation of law, you really are in a world of trouble.

It should be noted that we now possess evidence that indicates that Ms. Sullivan took extensive notes, and recorded conversations. Furthermore, that employees of the New York Magazine knew that they were using stolen and copyright protected photographs without permission (such as the photo that appears on page 37 and is marked "NOT FOR RELEASE").

Therefore, under the laws of North Carolina, where these torts will be pled, any destruction of notes, conversations, and/or documents, including emails (such as emails between Stacy Sullivan and Ms. Mariah Blake, Tod Robberson, Chris Thompson, Ed Artis, Cory Jacobs, Amy Hoppy, Jolanta Bielat, Bethany Mezick, etc, and between your employees—such as Jacobs, Hoppy, Bielat, Mezick, etc) would be a violation of law.

Of this, there is no dispute: you printed pictures in violation of copyright law. I implore you call my copyright attorney, Francis Pizzulli (310/451-8020) and resolve this infringement professionally.

Ms. Sullivan took extensive notes, and recorded conversations. Therefore, under the laws of North Carolina, California, and New York, all of which are potential venues, any destruction of notes, conversations, tapes, and/or documents, including emails (such as photos) would be a violation of law.

Documents, or evidence, or materials in the possession of Ms. Sullivan, or New York Magazine, and/or related persons or entities, is hereby asserted to be discoverable evidence.

# JK IDEMA

PO Box 691 - Fayetteville, NC 28302-0691

Further, this letter is to inform you that these evidentiary materials must be preserved until such time as litigation is concluded, and are not subject to any document destruction procedure or policy your organization may have or may institute in the future until such time as you receive written notification from me that all related litigation has ceased.

You are hereby AGAIN DIRECTED to return all photographs obtained under false pretenses, and all materials which are my rightful property (and retain no copies), including the photographs which were not licensed and which are copyright protected.

Additionally, I am requesting my prior letter to the Editor, which outlines a series of outright, blatant, and nefarious bold-faced lies, be researched by your legal department because your failure to retract statements which you cannot prove, such as false statements you allege to be in my military file, will be followed by litigation, demands for production of documents, sworn depositions, etc.

To resolve this matter without litigation in federal court, you must print my letter to the editor in its entirety, absent collateral salutations and closings which do not apply to the context and content of your article, and by paying licensing fees and damages related to the illegal procurement and publication of copyright protected images.

Lastly, because your photo department actually licensed some of the images you printed from Polaris, knowing that all images had to be licensed, punitive damages are especially warranted should you elect to resolve this in court.

You may reply through the address on this letter, and I request you also copy two of my attorneys, Mr. Francis Pizzulli and Mr. John Edwards Tiffany.

Sincerely,



Jack Idema

Cc:     John Edwards Tiffany, *Attorney*
        PO Box 190, 55 Washington Street
        Bloomfield, NJ 07003

        Francis C. Pizzulli, *Attorney*
        718 Wilshire Blvd
        Santa Monica, CA 90401

Courtesy copy to:
Jack Idema, Prisoner of War
C/o Russel Brown, US Consul
US Embassy
6180 Kabul Place, Dulles, VA 20189-6180
Postage is not required on the envelope if you print on the envelope:
(Exempt from Postal Fees, Article 140 Geneva Convention)

-----Original Message-----
From: NYSD_ECF_Pool@nysd.uscourts.gov
Date: Tue, 26 Feb 2008 00:19:23
To:deadmail@nysd.uscourts.gov
Subject: Activity in Case 1:07-cv-09516-DAB Counter Terrorist Group US et al v.
New York Magazine et al Motion for Extension of Time

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT
RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy
permits attorneys of record and parties in a case (including pro se litigants) to receive one free
electronic copy of all documents filed electronically, if receipt is required by law or directed by
the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of
each document during this first viewing.  U.S. District Court United States District Court for the
Southern District of New York Notice of Electronic Filing

The following transaction was entered by Tiffany, John on 2/26/2008 at 0:19 AM EST and filed
on 2/26/2008

Case Name: Counter Terrorist Group US et al v. New York Magazine et al
Case Number:1:07-cv-9516
Filer:J.K. Idema
Counterr Group
Counter Terrorist Group US
Document Number:  4
Docket Text: EX PARTE MOTION for Extension of Time to Serve Summons and Complaint.
Document filed by Counter Terrorist Group US, Counterr Group, J.K. Idema.(Tiffany, John)

1:07-cv-9516 Notice has been electronically mailed to:

John Edwards Tiffany &nbsp &nbsp jet4444@verizon.net

1:07-cv-9516 Notice has been delivered by other means to:

The following document(s) are associated with this transaction: Document description:
Main Document
Original filename: n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1008691343 [Date=2/26/2008] [FileNumber=4303627-0
] [8d20565f07556245ef1e03b9c36a1edab2bf2657dc2913908bdbac77e7f9cbe63bf
150722540bb9a91bc0adb66a6f64358942e4e2f8ce20ccea8609587c8026b]]

[Highlight Emphasis Added]

**Exhibit H – ECF Notice**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### United States District Court for the Southern District of New York

## Notice of Electronic Filing

The following transaction was entered by Tiffany, John on 2/26/2008 at 0:19 AM EST and filed on 2/26/2008

| | |
|---|---|
| **Case Name:** | Counter Terrorist Group US et al v. New York Magazine et al |
| **Case Number:** | 1:07-cv-9516 |
| **Filer:** | J.K. Idema |
| | Counterr Group |
| | Counter Terrorist Group US |
| **Document Number:** | 4 |

**Docket Text:**
**EX PARTE MOTION for Extension of Time *to Serve Summons and Complaint*. Document filed by Counter Terrorist Group US, Counterr Group, J.K. Idema.(Tiffany, John)**

**1:07-cv-9516 Notice has been electronically mailed to:**

John Edwards Tiffany    jet4444@verizon.net

**1:07-cv-9516 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=2/26/2008] [FileNumber=4303627-0
] [8d20565f07556245ef1e03b9c36a1edab2bf2657dc2913908bdbac77e7f9cbe63bf
150722540bb9a91bc0adb66a6f64358942e4e2f8ce20ccea8609587c8026b]]