UNITED STATES DISTRICT COURT
For The Southern District Of New York

| | |
|---|---|
| COUNTER TERRORIST GROUP US, COUNTERR GROUP, and J. K. IDEMA, *Plaintiffs,*<br><br>v.<br><br>NEW YORK MAGAZINE; NEWYORKMETRO.COM; NEW YORK MAGAZINE HOLDINGS, LLC, LAWRENCE C. BURSTEIN, *et al, Defendants.* | ECF Case<br><br>Case # 07 CIV 9516 (DAB)<br><br>**Assigned Judge:**<br>Honorable Deborah A. Batts |

## AFFIDAVIT OF BROOKE MURPHY

I, Brooke Murphy, hereby make the following declaration with respect to the above-captioned matter, and state as follows:

### Background of Service

1. My name is Brooke Murphy. I am self-employed as a civil investigator.

2. On or about January 25, 2008 I received copies of all summonses and complaints in this action with a letter from Attorney John Tiffany directing me to find and locate the remaining un-located defendants and effect service on all defendants within 30 days (a copy of that letter is attached hereto as Exhibit A).

3. Having received Mr. Tiffany's correspondence, summonses, and complaints on January 25th, I made two errors. First, I incorrectly assumed I had 30 days from January 25th. Second, I actually counted 120 days from October 24th, 2007 and determined that my last day to serve was February 25th, 2008. After re-checking my time calculation I discovered this error was made because I mistakenly skipped the last week in November 2007 while writing the numbered days on the calendar I was using. I was not aware of these errors until it was brought to my attention last week.

4. Believing, incorrectly, that I had until February 25th to perfect service on all defendants, I began the process of sending out summonses and complaints to other states for service and serving the defendants located in New York on February 20th 2008. I stated this February 20th date in my prior Affidavit, which was signed on the 10th of March 2008 but, I am advised by counsel, was not yet filed in this case. My dated signature and the fax imprint (upside down on bottom of pages) on that previous affidavit is *prima facie* evidence that this assertion is true and irrefutable.

### Service Upon the New York Magazine Defendants

5. My investigations revealed that the New York Magazine defendants listed no registered agent with the New York Secretary of State for service and that these defendants had failed to update their information when changing their name from New York Magazine Holdings LLC to New York Media Holding LLC. They also continue to list their old address with the Secretary of State as 444 Madison Avenue, NY, NY.

6. I have reviewed the Declaration of Rachel Strom. Contrary to Ms. Strom's assertion in paragraph 3 of her declaration, at NO time did Jocelyn Gottschalk state directly to me that she was "the Human Resources and Operations Generalist at New York magazine. Gottschalk told me she was the attorney for New York Magazine and had authority to accept the service. Further she stated that a corporate officer was present, named Kathryn Harrison, and in a meeting and had authorized her to accept service. It is my experience with service in New York that: a) an attorney may accept service on behalf of a defendant, and b) that if the corporate officer is present at the office (even if security will not let you see that person), you can leave the summons and complaint with the receptionist or another employee. In this case, I was told that several of the corporate officers were present that day, including Lawrence Burstein who I confirmed was there right before arriving.

7. Further, I outlined these events in my prior affidavit signed and faxed on March 10, 2008, as evidenced by the fax imprint on the bottom of that affidavit (Brooke Murphy Affidavit March 10, 2008, ¶¶ 2-17).

8. Whatever position Jocelyn Gottschalk really held or holds at New York Magazine is inconsequential because Gottschalk told me she was their attorney. If, in fact, she is only a human resources employee, then I was misled and lulled into believing that she was authorized to accept service. Further, as stated in my prior affidavit (Brooke Murphy Affidavit March 10, 2008, ¶¶ 13-14), Ms Gottschalk told me without hesitation that New York magazine already had copies of the summons and complaint, and gave me the affirmative impression that they had these copies for quite sometime.

9. Ms. Gottschalk called it "the Idema matter" and appeared to have more than just superficial knowledge of the case (Murphy Affidavit March 10, 2008, ¶ 14).

10. When I later discovered that there was no Kathryn Harrison or Kit Harrison listed at New York Magazine (as Ms. Gottschalk related to me), I contacted "Kit Taylor," the Chief Operating Officer. Having concern for being given a fraudulent name, we finally made contact with Kit Taylor two days later and asked her if she was accepting service of the summons and complaint. Ms. Taylor stated, on a three way call (she was not aware of this) that Ms. Gottschalk was authorized to accept service as their attorney, and that they had copies of the complaint several months before. She agreed to send back a confirming email to the law offices of John Tiffany and gave us her direct email address. Mr. Tiffany's law office sent an email on February 27, 2008 confirming this and copied me (attached hereto as Exhibit B). To my knowledge Ms. Taylor never replied in spite of assuring us that she would.

### Service Upon Defendant Stacy Sullivan

11. I have reviewed the declaration of Rachael Strom, specifically ¶4 related to the service of Stacy Sullivan. I am unaware of any declaration or statement under oath by Stacy Sullivan, if one even exists. Contrary to Ms. Strom's hearsay "understand[ing]" of the events, Ms. Sullivan was personally served, twice. After going to Ms. Sullivan's apartment on three different occasions, February 20, 21, and 23, it became obvious that the doorman had been specifically instructed to be on the look out for a process server.

12. After several days of research and investigation, we finally discovered the current work location of Stacy Sullivan. Knowing this service would be extremely difficult, I immediately requested Mr. Tiffany also retain Guaranteed Subpoena Company so that two process servers would be attempting to serve Ms. Sullivan.

13. Ms. Sullivan works on the 34th floor at 350 Fifth Avenue. Her workplace is more protected then the US Federal Courthouse at Foley Square. That being said, Ms. Strom's "understand[ing]" of the service upon Sullivan is blatantly false. Neither I, nor the other process server (I physically saw the other process server arrive after me) left a copy in "the lobby of her office building (Strom Declaration ¶4). The lobby was on the first floor. I managed to get to the 34th floor and I was able to get Ms. Sullivan to come out using the standard ruse of package delivery.

14. Sullivan came into the security room, roughly 10x10', and I identified her from the photographs in the investigative report I requested on February 16th 2008 and received on February 19th 2008 (attached hereto as Exhibit C). Sullivan was behind 1 ½ bulletproof glass and I slid the summons and complaint through the slot towards her and I asked Ms. Sullivan to acknowledge her identity. Sullivan then realized why I was there (obviously because she knew about this case) looked around, yelled; at which point I said she was served. Sullivan yelled that it was not her. Ms. Sullivan lifted her hands up in the air so that she wouldn't touch the papers and said "I am not served!" The papers either fell on the desk below the slot or the floor below the glass and Sullivan ran into back office and disappeared. A male co-worker picked up the papers and said he would accept them. I advised him that it was too late, Sullivan was already served.

15. The second process server, a large Irish New York City police officer working for Guaranteed Subpoena in New Jersey had just arrived and Sullivan's security was also there and began arguing with him. I waited to watch the events. The security officers told the cop that Sullivan wasn't going to accept any papers from anyone. The cop told security that he didn't care, he had already confirmed

Sullivan was there and he knew she was there, and that Sullivan was properly served by his leaving a copy of the papers at her office.

16. Sullivan was personally served in <u>her</u> office, on the 34th Floor— not in the scenario Ms. Strom states she "understand[s]."

### Service Upon Defendant Edward Artis

17. After learning that Mr. Artis had stated on the internet and in conversations that he had moved to the Philippines to live in order to avoid being sued by Mr. Idema, we retained a private investigator to locate Artis in the Philippines. Although we had photographs of Mr. Artis in the Philippines, we could not locate him. Finally, somewhere in the time frame of mid-February 2008, we were tipped off by one of his former associates that he would be in Los Angeles near the end of February. We then retained two detectives, and three additional process servers to locate him, including the one that was successful and is referred to at the "PI to the Stars."

18. John Grogan, a licensed process server and polygrapher in Los Angeles had tracked Artis down three years before and we put him on the job of finding Mr. Artis. Four people, including myself and Mr. Idema stayed in contact via phone each night as we tried to locate Artis. Finally, on February 25th, just before midnight EST, Grogan found Artis' Jeep while we all were on text messaging and on conference calls. Artis was with his alleged ex-wife hiding in a bathroom. Grogan served him through the bathroom window by saying he was a neighbor that needed help. Artis said it was not him in spite of the fact that Grogan was holding a photograph of Artis we had emailed Grogan previously, and Grogan knew him from a prior service.

### Service Upon Defendant Tracy Paul Warrington

19. While it is true, according to the last process server in Texas we retained, Warrington answered his door and accepted the pleadings without drama, the fact remains that trying to find Warrington was like trying to find the Waldo cartoon character. He has no listed number, no listed address, and although he appears all over the internet in chatrooms and forums, he uses an anonymous email addresses and multiple cover names. Originally we believed Warrington

was in fact in Schertz, Texas. But, after sending someone to that location we were told Warrington was in Hawaii. Finding Warrington required extensive research, cost, and contacts within the Special Operations community who reluctantly finally agreed to assist us. We spent months trying to find Warrington because we had been led to believe he was no longer in Schertz, Texas, where he turned out to be in the end, and did accept service without incident when he answered the door.

### Service Upon Defendant Tod Robberson

20. I was not personally involved in the service of Robberson. I can only state that I helped find five different process servers in Texas to find Robberson because he could not be served at Dallas Morning News because of the extensive security on the building and their refusal to allow him to be served there.

The foregoing facts are of my own personal knowledge and I could competently testify to them. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31st day of March 2008.

Brooke Murphy
Newark, New Jersey

**Law Offices of John E. Tiffany P.C.**
The Robert Treat Center
50 Park Place, 10th Floor, Newark, New Jersey 07102
Tel: 973.242-3700 • Fax: 973.242-3799

January 20, 2008

Mr. Brooke Murphy
Murphy & Associates
PO Box 88
Little Falls, New Jersey 07424

Reference: *Idema, et al v. New York Magazine., et al*, civil litigation
Subject: Service of Summons and Complaints on all defendants
Case #: 07 CIV 9516 US Federal Court Southern District of New York

Dear Brooke:

Please find enclosed all summonses and complaints for service on the defendants in this case. This case has been pending for almost three months now. We have 120 days from the day of filing to serve.

Brooke, I want to stress that it is imperative that these people are served as soon as you can locate all of them. If one is served without the others they will evade, of that you can be sure. You need to find all of them, confirm their locations, and have them all served at the same time.

Hire any and all investigators and process servers you need. Either bill my firm as normal, or if needed, charge the fees to the following credit card:



I have attached backgrounds on those defendants which we had done. You can contact Jack at ██████████ if you need further information on a defendant or additional photographs of a defendant.

Sincerely,

John Edwards Tiffany
Attorney

20 enclosures

www.Jet4Law.com • email: jet4444@verizon.com
Admitted to: New Jersey, New York, SDNY, EDNY, DCDC, NJDC

Ex. A

Ex. B

| | |
|---|---|
| From: | \<parajet@jet4law.com\> |
| To: | \<kit_taylor@nymag.com\> |
| Cc: | \<NYMagCase@jet4law.com\> |
| Sent: | Wednesday, February 27, 2008 2:03 PM |
| Attach: | JET Law contactsheet.pdf |
| Subject: | Service of Summons, Complaint, and Discovery |

Dear Ms. Taylor,

As stated we will be asking the Court for certain relief based on the evasive and obstructive acts of certain individual defendants.

It is our understanding that NY Magazine, New York Metro.com, New York Magazine Holdings LLC, and Lawrence C. Burstein have voluntarily accepted service by our process server, and that Ms. Gottshalk had these defendants' authorization to accept service upon their behalf.

If this is our understanding we will not be seeking any relief in the federal court today related to the four NY Magazine defendants.  Further that I hope this case can handled amicably between these defendants and our firms.

I have enclosed a contact sheet for my firm for future reference.

Sincerely,
John Edwards Tiffany
Attorney

Ex. B

4/2/2008

BROOKE- HERE ARE THE UPDATES WITH NEW PICTURES & MAPS

**SULLIVAN:**

**IF SHE WONT ANSWER HER DOOR,** then you have to figure out how to serve Stacy Sullivan at her work address:

**SECOND** if you can get anyone to answer the door then serve them at her **HOME ADDRESS:**

Stacy Sullivan
252 W. 14th St. #3
New York, NY  10011-5970
212-627-3921



1
Ex. C

## We just located Stacy Sullivan's BUSINESS ADDRESS:

### *Human Rights Watch Staff*
**Communications**
Stacy Sullivan, *US Media Director*

Stacy Sullivan, Human Rights Watch; 212-216-1897; sullivs@hrw.org
Human Rights Watch
350 Fifth Avenue, 34th floor
New York, NY 10118-3299 USA
Tel: 1-(212) 290-4700,
Fax: 1-(212) 736-1300



**STACY SULLIVAN**





2

**THE NEW YORK MAGAZINE DEFENDANTS:**

NEW YORK MAGAZINE;
NEWYORKMETRO.COM;
NEW YORK MAGAZINE HOLDINGS, LLC,
LAWRENCE C. BURSTEIN,

NOTE: New York Magazine Holdings LLC changing its name to New York Media Holdings LLC. is no problem, serve them, even if they changed the name on the office door. We don't know which place they have their executive offices at:

## Service Address Information

| | |
|---|---|
| Address: | New York Magazine<br>444 Madison Ave., 4th Fl.<br>New York, NY 10022-6999 |
| Phone: | 212-508-0700 |
| Fax: | 212-221-9195 |

## Second Service Address Information

| | |
|---|---|
| Address: | New York Media<br>75 Varick Street<br>New York, NY, 10013 |
| Phone: | 212-508-0700 |
| Fax: | 212-221-9195 |

**Serve 4 sets of summonses complaints and discovery at BOTH of these locations.**

These have to be served on an officer or if their General Counsel accepts; Three officers we know of are:
BRUCE WASSERSTEIN (the Chairman)
LAWRENCE C. BURSTEIN (a defendant)
Anup Bagaria (the CEO)

Photographs of Burstein and Wasserstein on following page:

3

## BRUCE WASSERSTEIN - CEO






## LAWRENCE C. BURSTEIN - Publisher




4